T.C. Memo. 2009-54

UNITED STATES TAX COURT

GENE A. CAIN, DECEASED, ELTA E. CAIN, SUCCESSOR-IN-INTEREST,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25151-06L.[1]               Filed March 12, 2009.

Hugo Torbet, for petitioner.

Neal O. Abreu, Margaret Martin, and Jeremy L. McPherson, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PANUTHOS, Chief Special Trial Judge:  This case is before

the Court on petitioner's request for judicial review of an

_____

     [1] This case was originally docketed as a small tax case in
accordance with petitioner's election.  Before trial petitioner
orally moved that the small case designation be removed.  The
Court granted the request, and the S designation was stricken.

Internal Revenue Service (IRS) determination to sustain a notice of intent to levy to collect assessed backup withholding taxes and additions to tax.

Pursuant to two Forms 2504-AD, Excise or Employment Tax— Offer of Agreement to Assessment and Collection of Additional Tax and Offer of Acceptance of Overassessment, respondent assessed backup withholding taxes under section 3406 and additions to tax for failure to file information returns required by section 6041A(a) as follows:

|  |  | Additions to Tax |
| Year | Backup Withholding | Sec. 6651(a)(1) |
| 1993 | $4,271 | $1,068 |
| 1994 | 4,411 | 1,103 |

This collection action requires us to decide whether the IRS abused its discretion in determining that collection by levy may proceed.

Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

FINDINGS OF FACT

Some of the facts have been stipulated, and we so find.

Petitioner was an attorney and resided in California when he filed the petition.[2]  Between 1993 and 1995 petitioner practiced

---

[2] After the case was submitted, petitioner's counsel informed the Court that petitioner died on Oct. 31, 2008.  Elta E. Cain is petitioner's successor-in-interest under California
(continued...)

law in California as a sole proprietor and paid paralegals and attorneys for work they did for him. Petitioner did not withhold taxes from payments to these workers. He also did not collect taxpayer identification numbers (TINs) from these workers or report the payments to the IRS.

The IRS examined records relating to petitioner's payments to these workers during 1993, 1994, and 1995. The examiner concluded that the attorneys and paralegals in question worked for petitioner as independent contractors and should not be reclassified as employees. The examiner determined that petitioner was liable for backup withholding on payments made to these workers because of the workers' failure to provide TINs to petitioner. Petitioner was advised that the IRS would abate the backup withholding to the extent that petitioner provided Forms 4669, Statement of Payments Received, from his payees. The examiner provided blank forms to petitioner for this purpose. However, petitioner did not return any Forms 4669 signed by his workers.

In a letter dated March 12, 1998, the examiner explained that as a result of petitioner's failure to secure TINs for the individuals he paid, petitioner was liable for backup withholding

---

[2](...continued)
law, and she has standing to represent his estate. Cf. Nordstrom v. Commissioner, 50 T.C. 30 (1968). For convenience, we will refer to Gene A. Cain as petitioner.

tax under section 3406 and also liable for additions to tax, because he failed to file returns reporting those payments as required by section 6041A(a).

The amounts petitioner paid to paralegals and attorneys and the examiner's proposed taxes and additions to tax were as follows:

| Year | Amounts Paid | Tax | Additions to Tax Sec. 6651(a)(1) |
|------|------|------|------|
| 1993 | $30,969.18 | $9,600.45 | $2,400.11 |
| 1994 | 63,239.39 | 19,604.21 | 4,901.05 |
| 1995 | 58,382.55 | 18,098.87 | 4,524.73 |
| Total | 152,591.12 | 47,303.53 | 11,825.89 |

In the March 12, 1998, letter, the examiner also provided petitioner an opportunity to confer with the regional Appeals Office, instructing him to file a request for a conference within 30 days if he disagreed with the examiner's proposed adjustments. At a time not apparent from the record, petitioner requested Appeals Office consideration. On August 31, 1998, an Appeals officer (AO) confirmed the referral to Appeals and asked petitioner to contact him to discuss the case.

In a September 3, 1998, letter, the AO confirmed a conversation with petitioner and provided a schedule of the amounts paid to each of eight workers in each of the years 1993, 1994, and 1995. The AO invited petitioner to provide statements from his workers attesting to their receipt of the payments. The statements were to contain the information required by Form 4669

(since petitioner had expressed reluctance to ask his workers to complete and sign the IRS form). In a November 9, 1998, letter, the AO told petitioner he would hold the case open until November 30, 1998, but that his closing the case would not preclude a later abatement following receipt of additional statements.

Petitioner mailed statements from some but not all of his workers to the AO on November 30, 1998. Four of the eight workers declared that they reported all funds received from petitioner's law practice on their Federal income tax returns. Petitioner informed the AO that the remaining four workers failed to respond to his letters requesting statements regarding his payments to them.

The AO responded to petitioner's November 30, 1998, submission, stating that the statements petitioner provided did not contain all the information required on Form 4669. Nevertheless, the AO offered a compromise: the IRS would concede the backup withholding and additions to tax for the workers from whom petitioner received statements, if petitioner conceded the backup withholding and additions to tax for the remaining workers. The AO instructed petitioner to sign and return Forms 2504-AD if he chose to pursue this settlement.

On March 11, 1999, petitioner signed Forms 2504-AD for 1993 and 1994,[3] reflecting the following agreed amounts:

| Year | Backup Withholding | Additions to Tax Sec. 6651(a)(1) |
|------|--------------------|----------------------------------|
| 1993 | $4,271 | $1,068 |
| 1994 | 4,411 | 1,103 |

Respondent executed the Forms 2504-AD on May 4, 1999, and on May 12, 1999, the AO wrote to petitioner to inform him that the settlement agreement had been approved.  On June 28, 1999, respondent assessed the agreed-upon amounts for 1993 and 1994, plus interest, and sent petitioner statutory notices of balance due.  On August 2, 1999, respondent mailed petitioner a notice of intent to levy.

For reasons not apparent from the record, the IRS placed petitioner's account in currently noncollectible (CNC) status on October 2, 2000.  It appears that petitioner was unaware that the account had been placed in CNC status.  The IRS issued a Final Notice of Intent to Levy and Notice of Your Right to a Hearing on March 6, 2006, and petitioner submitted Form 12153, Request for a Collection Due Process Hearing, on March 10, 2006.  Again for reasons not apparent from the record, the IRS removed petitioner's account from CNC status on April 4, 2006.

_____

[3] Petitioner provided statements for each of the workers he paid in 1995, resulting in respondent's offering to concede all of the backup withholding and additions to tax for 1995.  Because petitioner provided statements for only some of his workers for 1993 and 1994, tax and additions to tax remained for those years.

In his request for a collection hearing, petitioner described his disagreement with the proposed collection action as follows:

> Your "Final Notice" states that you previously asked for payment. You have not. Assuming there is some validity to your claim (there is not) why would you be entitled to an assessment, late fees and interest for an amount never previously requested?

A settlement officer (SO) in respondent's Appeals Office replied to petitioner's request for a collection hearing with a letter on July 17, 2006. The SO scheduled a telephone conference for August 23, 2006 at 1 p.m., and told petitioner she would call him at the number on his hearing request unless he told her the proposed conference date would be inconvenient and arranged for another date and time. In this letter the SO also stated that petitioner could not challenge the existence or amount of the underlying tax liability because he had a prior opportunity to dispute the liability. Finally, the SO informed petitioner that she could not consider collection alternatives unless petitioner completed and submitted a Form 433-B, Collection Information Statement for Businesses, and she asked petitioner to submit that information within 14 days.

The SO sent petitioner another letter on August 23, 2006, stating that she had not received any indication from petitioner that the proposed conference date was inconvenient and that when she called petitioner at the arranged time and using the

telephone number petitioner provided, she was told that he was unavailable. The SO also stated that she had not received any information from petitioner in response to her July 2006 letter. Finally, she informed petitioner that Appeals would make a determination on the basis of the administrative file and allowed him 14 days to submit the information required for Appeals to consider collection alternatives, along with any documents supporting the issues petitioner raised in his hearing request. On November 16, 2006, the SO noted that petitioner had not responded to her letters and had not submitted any information beyond his hearing request.

The IRS issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 on November 22, 2006. The notice of determination stated that: (1) Petitioner did not present any information to dispute the appropriateness of the proposed levy action; (2) he did not submit any documentation to support consideration of collection alternatives; (3) the SO verified that all legal and procedural requirements had been satisfied; (4) the SO considered petitioner's claim that he did not receive any request for payment of the taxes and additions to tax at issue and determined not only that notice and demand for payment was mailed to petitioner's last known address but also that petitioner had agreed to these assessments during his previous Appeals

conference; and (5) the SO concluded that the collection action properly balanced the need for efficient collection with the legitimate concern that the collection action be no more intrusive than necessary. The IRS sustained the notice of intent to levy.

Petitioner filed a timely petition for lien or levy action for 1993 and 1994, stating "The IRS states that I filed 941s in 1993 and 1994 without paying the taxes withheld. In truth, no such forms were filled [sic] and I had no employees."

Petitioner was represented by counsel and testified at the trial in California. He argues that the final notice of intent to levy was defective because it did not include the type, year, and amount of the taxes respondent seeks to collect. The record includes only the first page of the notice of intent to levy, and this page does not identify either the type of tax, the periods at issue, or the amounts of tax and additions to tax at issue. The last sentence of this page reads: "We detail these charges, known as Statutory Additions, on the following pages." The page also lists a number of enclosures, including two publications and Form 12153.

Petitioner also argues that he never received any communication from respondent indicating that respondent accepted the compromise petitioner signed, and therefore the parties did not have a contract and petitioner's dispute over the underlying

liabilities was never resolved.  Petitioner argues in the alternative that if the Court finds that the parties had an agreement, then petitioner's failure to receive notice and demand for payment precludes respondent's proposed collection action. Finally, petitioner seeks equitable relief from interest and additions to tax.

                            OPINION

We have jurisdiction under section 6330(d)(1) to review the Commissioner's determination that the levy notice was proper and that the Commissioner may proceed to collect by levy.[4]

In reviewing the Commissioner's decision to sustain collection actions, where the validity of the underlying tax liability is properly at issue, the Court reviews the Commissioner's determination of the underlying tax liability de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  The Court reviews any other administrative determination regarding proposed collection actions for an abuse of discretion.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182. An abuse of discretion occurs when the exercise of discretion is

---

[4] The Pension Protection Act of 2006, Pub. L. 109-280, sec. 855, 120 Stat. 1019, amended sec. 6330(d) and granted this Court jurisdiction over all sec. 6330 determinations made after Oct. 16, 2006.  Perkins v. Commissioner, 129 T.C. 58, 63 n.7 (2007). The Internal Revenue Service (IRS) made the determination at issue on Nov. 22, 2006.

without sound basis in fact or law.  Murphy v. Commissioner, 125 T.C. 301, 308 (2005), affd. 469 F.3d 27 (1st Cir. 2006).  If the Court finds that a taxpayer is liable for tax, additions to tax, and/or penalties, then other aspects of the Commissioner's administrative determination sustaining the collection action will be reviewed for an abuse of discretion.  See Godwin v. Commissioner, T.C. Memo. 2003-289, affd. 132 Fed. Appx. 785 (11th Cir. 2005).

At the collection hearing, a taxpayer may raise any relevant issues relating to the unpaid tax or proposed levy, including spousal defenses, challenges to the appropriateness of the collection actions, and offers of collection alternatives.  Sec. 6330(c)(2)(A).  In addition, he may challenge the existence or amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have an opportunity to dispute such liability.  Sec. 6330(c)(2)(B).

In making a determination following a collection hearing, the Commissioner must consider:  (1) Whether the requirements of any applicable law or administrative procedure have been met, (2) any relevant issues raised by the taxpayer, and (3) whether the proposed collection action balances the need for efficient collection with legitimate concerns that the collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

Petitioner challenges:  (1) The sufficiency of the final notice of intent to levy, arguing that section 6330(a)(3)(A) requires that the notice state the amount of the unpaid tax; and (2) the existence or amount of the underlying tax liability, in that respondent did not accept his compromise, or if respondent did accept it, then respondent never sent the notice and demand which section 6303(a) requires him to send within 60 days of assessment.

1.  Notice of Intent To Levy

At trial petitioner argued for the first time that the collection notice was defective because it did not include the amount of the unpaid tax.  He relied upon the portion of the notice admitted at trial.  The parties stipulated that the notice submitted in evidence represented the first page of the final notice of intent to levy.  Furthermore, it appears (from the received stamp showing a date of March 10, 2006, which the IRS placed on that first page) that petitioner sent this copy of the first page of the final notice of intent to levy to the IRS, attached to his hearing request (which was also received on March 10, 2006).[5]

---

[5] Petitioner also alleges that when he asked respondent's counsel whether respondent had provided him copies of the entire administrative record, respondent's counsel stated that he had provided all documents he possessed and that he would search for additional documents, but only if petitioner identified the documents petitioner sought.  Petitioner did not request a

(continued...)

The notice itself references additional pages and states that the statutory additions are detailed on those subsequent pages. As indicated, the first page did not include either the amount of the unpaid tax or the periods at issue. Yet the Form 12153 petitioner submitted to request the collection hearing clearly stated his dispute with the levy action with respect to tax years 1993 and 1994.

We are satisfied that the final notice of intent to levy respondent issued to petitioner on March 6, 2006, contained the information necessary to apprise petitioner of precisely which taxes respondent proposed to collect by levy, including the amount of the unpaid tax and the periods at issue (resulting in petitioner's accurate reference to tax years 1993 and 1994 in his hearing request).

2. Underlying Tax Liability

The taxes at issue are employment taxes, for which respondent was not required to issue a notice of deficiency under section 6212.[6]

---

[5](...continued) complete copy of the Mar. 6, 2006, final notice of intent to levy. We note that petitioner submitted a copy of only the first page of the notice of determination when he filed his petition and amended petition with the Court.

[6] The Commissioner must issue a notice of deficiency with respect to a deficiency determination in respect of any tax imposed by subtitle A (income taxes), subtit. B (estate and gift taxes), and certain excise taxes in subtit. D. Sec. 6212(a).

(continued...)

In <u>Lewis v. Commissioner</u>, 128 T.C. 48 (2007), another case involving tax liabilities which could be assessed without issuing a notice of deficiency (to wit, a section 6651(a) addition to tax for failure to file in a situation not involving a deficiency determination), we considered the limitation imposed by section 6330(c)(2)(B) on a taxpayer's ability to raise challenges to the underlying tax liability in a collection proceeding after he had previously challenged those liabilities.  We held that "A conference with the Appeals Office provides a taxpayer a meaningful opportunity to dispute an underlying tax liability." <u>Id.</u> at 61.

Following the March 12, 1998, letter, petitioner challenged the determination of the examining agent.  In prosecuting this appeal, petitioner provided documents to the AO.  As a result of this information (which petitioner had not provided to the examining agent), the AO offered to compromise petitioner's liability.  Petitioner agreed, and petitioner and respondent signed Forms 2504-AD memorializing the agreement.  (Petitioner signed on March 11, 1999; respondent, on May 4, 1999.)  The IRS assessed the amounts reflected on those forms on June 28, 1999.

---

[6](...continued)
The employment taxes and additions to tax that the IRS seeks to collect in this case are codified in subtits. C and F, respectively, and are not subject to deficiency procedures and the limitations on assessment of sec. 6213.

Petitioner contends that he did not receive the AO's March 12, 1999, letter informing him that respondent had accepted the settlement proposal and that he did not receive the June 28, 1999, notice and demand for payment. We need not and do not make a finding as to whether petitioner received the AO's letter or the notice and demand for payment because IRS records indicate that the IRS mailed both documents to petitioner's last known address.[7] It is clear that petitioner not only had the opportunity to dispute the underlying tax liabilities but also availed himself of the opportunity for Appeals Office consideration when he challenged the examining agent's determination, provided additional documents to the AO, and negotiated a substantial reduction in the backup withholding and additions to tax.

Respondent was authorized to assess the backup withholding without petitioner's agreement and without issuing a notice of deficiency. See supra note 6. Petitioner's signing the Forms 2504-AD establishes his participation in an Appeals conference during which he disputed these liabilities. As a result, petitioner is not entitled to challenge the underlying tax liabilities again in the collection review hearing or in this

_____

[7] The notice and demand requirement of sec. 6303(a) is satisfied by a mailing to a taxpayer's last known address. Proof of receipt is not required. See Otto's E-Z Clean Enters., Inc. v. Commissioner, T.C. Memo. 2008-54.

proceeding.[8]  Sec. 6330(c)(2)(B); Lewis v. Commissioner, supra at 62; sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

Petitioner appears to be particularly distressed by the fact that respondent did not immediately seek to collect the assessed tax liabilities and in fact a number of years passed before respondent's issuing the final notice of intent to levy.  While the record does not fully explain the basis for the CNC status and the years without collection action, we note that petitioner, an attorney, does not indicate that he took any action after agreeing to the assessment.  To this extent, petitioner participated in the delay of the collection of the tax liabilities to which he had agreed.

Conclusion

The notice of determination indicates that the SO considered relevant issues petitioner raised, whether the IRS met the requirements of applicable law and administrative procedure, and whether the proposed collection action balances collection efficiency and intrusiveness.  Petitioner did not pursue any collection alternatives or raise any spousal defenses.

---

[8] Similarly, where a taxpayer consents to a proposed deficiency and waives restrictions on assessment, the Commissioner need not issue a notice of deficiency, and that taxpayer's waiver of the opportunity to challenge the deficiency prevents his contesting the underlying tax liability in a collection hearing and in this Court.  Aguirre v. Commissioner, 117 T.C. 324, 327 (2001); Deutsch v. Commissioner, T.C. Memo. 2006-27, affd. 478 F.3d 450 (2d Cir. 2007).

Petitioner's previous opportunity to dispute the underlying tax liabilities and his agreement to assessment of the liabilities prevent him from challenging those liabilities again.

The SO satisfied the requirements of section 6330, and we conclude that the IRS's decision sustaining the proposed levy action was neither erroneous nor an abuse of discretion.

We have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.